Robert WILLIAMS, Plaintiff–Appellant,

v.

Major Charles STRICKLAND, Individually and in his Official Capacity as Administrator of the Salvation Army Adult Rehabilitation Center, San Francisco Chapter, Defendant–Appellee.

No. 93–17224.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 10, 1995.

Decided June 28, 1996.

Philip C. Monrad, Leonard, Nathan, Zuckerman, Ross, Chin & Remar, Oakland, California, for plaintiff-appellant.

Brendan Dolan, Brobeck, Phleger & Harrison, San Francisco, California, for defendant-appellee.

Before: CHOY, POOLE, and KLEINFELD, Circuit Judges.

Opinion by Judge CHOY; Dissent by Judge POOLE.

CHOY, Circuit Judge:

Robert Williams appeals the district court's grant of summary judgment against his minimum wage and overtime claims under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201–219 ("FLSA"). The district court held that Williams, who spent six months at an Adult Rehabilitation Center of the Salvation Army, was never an employee of the Salvation Army for purposes of the FLSA. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

I

We consider the facts in the light most favorable to the nonmoving party, Williams. *Jesinger v. Nevada Fed. Credit Union,* 24 F.3d 1127, 1130 (9th Cir.1994).

The Salvation Army is a nonprofit religious and charitable organization which runs both Adult Rehabilitation Centers and thrift stores. At the Rehabilitation Centers, the Salvation Army offers beneficiaries room, board, work therapy, and spiritual and religious counseling for periods up to six months. Beneficiaries are required to apply for general assistance and food stamps and turn those benefits over to the Army to offset the cost of their room and board.

Williams applied for admission to the San Francisco Rehabilitation Center. Homeless at the time, he stated on his application that he was seeking help for drinking, religious, and employment problems. He signed a "Beneficiary's Admittance Statement" which specified:

I further understand that under no circumstances can this Center be under any obligation to me; and that I am a beneficiary and not an employee of this Center.

I understand that my admission and continued residence is dependent upon my needing such assistance and my willingness to help myself and others so situated, including the voluntary performance of such duties as may be assigned to me.

Williams was admitted and stayed at the Center for approximately six months, from July 1989 through February 1990.

Once admitted to the Center, Williams participated in the rehabilitation program. A treatment plan was developed for him and he attended in-house counseling, an alcohol-abuse program, and church services. As part of his treatment, Williams engaged in work therapy on a full-time basis. From July 1989 through October 1989, he worked in a furniture restoration shop refinishing furniture. Restored items were then sold through one of the Salvation Army's thrift stores. From October 1989 through January 1990, Williams sorted food and clothing donations at the Center's loading dock. Williams received food, clothing, shelter, and a small stipend of seven to twenty dollars per week. Williams was ultimately dismissed from the Center for drinking.

Williams sued the Salvation Army alleging that he was an employee under the FLSA, and therefore entitled to minimum wage and overtime pay. Counsel was appointed for Williams on July 23, 1992. Almost one year later, the Salvation Army filed a motion for summary judgment. Williams filed a cross-motion for summary judgment and a request for further discovery under Fed.R.Civ.P. 56(f). The district court concluded that in view of the economic realities of the relationship, Williams was not an employee, and granted summary judgment for the Salvation Army and denied Williams's Rule 56(f) re-

quest. *Williams v. Strickland,* 837 F.Supp. 1049, 1053–54 (N.D.Cal.1993). Williams timely appeals and we review de novo. *Jesinger,* 24 F.3d at 1130.

## II

We begin with the language of the FLSA in determining whether Williams was an "employee." The FLSA provides:

Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at ... $4.25 an hour after March 31, 1991.

29 U.S.C. § 206(a)(1). An "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." § 203(d). The term "employee" means "any individual employed by an employer," § 203(e)(1), and "employ" includes "to suffer or permit to work." § 203(g).

We find guidance in a pair of United States Supreme Court cases. The first case is *Walling v. Portland Terminal Co.,* 330 U.S. 148, 67 S.Ct. 639, 91 L.Ed. 809 (1947). *Walling* presented the issue of whether trainees in a one-week railroad brakeman course were employees under the FLSA. This training course was a prerequisite for employment with the railroad and trainees did not displace any paid workers. *Id.* at 150, 67 S.Ct. at 640. Upon successful completion of the course, trainees were given a $4 stipend for each day spent in training. *Id.*

The Supreme Court held that these trainees were not employees entitled to a minimum wage under the FLSA. *Id.* at 153, 67 S.Ct. at 641–42. The Court first noted the broad application of the FLSA. "This Act contains its own definitions, comprehensive enough to require its application to many persons and working relationships which, prior to this Act, were not deemed to fall within an employer-employee category." *Id.* at 150–51, 67 S.Ct. at 640. Yet, despite the broad scope of the FLSA, the Court articulated two limits to FLSA coverage which are relevant to this appeal. First, the Court wrote that the definition of employee was "not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of another," and second, the FLSA does not make a person "whose work serves only his own interest an employee of another person who gives him aid and instruction." *Id* at 152, 67 S.Ct. at 641. Applying these principles, the Court held that the trainees were not employees because the railroad received no "immediate advantage" from their work. *Id.* at 153, 67 S.Ct. at 642.

The second case is *Tony and Susan Alamo Foundation v. Secretary of Labor,* 471 U.S. 290, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985). In *Alamo,* the Supreme Court held that the district court did not clearly err by finding that "associates" of the Foundation were "employees" under the FLSA. *Id.* at 301, 105 S.Ct. at 1961. The Foundation, a nonprofit religious organization, was incorporated "to care for the fatherless and to rescue the fallen, and generally to do those things needful for the promotion of Christian faith, virtue, and charity." *Id.* at 292, 105 S.Ct. at 1956. The Foundation derived income from a number of businesses including service stations, retail stores, hog farms, construction companies, and a motel. *Id.* The businesses were staffed largely by "associates" who were drug addicts, derelicts, or criminals before their conversion at the Foundation. *Id.* The associates received no cash salary, but were provided with food, clothing and shelter. *Id.* Former associates testified that they had been "fined" for poor job performance, worked on a "commission" basis, and were prohibited from obtaining food if they were absent from work, even where the absence was due to illness. *Id.* at 301 n. 22, 105 S.Ct. at 1961 n. 22.

The Supreme Court held that the district court did not clearly err by finding that the associates were employees. *Id.* at 301, 105 S.Ct. at 1961. Unlike *Walling,* where the training course lasted only several days, the Court noted that the associates were dependent upon the Foundation for long periods, and in some cases several years. *Id.* Noting that the test for employment is one of "economic reality," the Court concluded that "the district court's finding that the associ-

ates must have expected to receive in-kind benefits—and expected them in exchange for their services—is certainly not clearly erroneous." *Id.* The Court reached this holding despite testimony from some associates that they performed their work voluntarily and did not want a minimum wage. *Id.* at 302, 105 S.Ct. at 1962.

### III

■ We hold that Williams was not an "employee" entitled to a minimum wage under the FLSA. Williams had neither an express nor an implied agreement for compensation with the Salvation Army and thus was not an employee.

■ Williams did not have an express agreement for compensation with the Army. To the contrary, Williams signed a Beneficiary's Admittance Statement which provided: "I further understand that under no circumstances can this Center be under any obligation to me; and that I am a beneficiary and not an employee of this Center." While FLSA rights cannot be waived, see *Alamo,* 471 U.S. at 302, 105 S.Ct. at 1962, this statement indicates that there was no express agreement for compensation.

There was also never an implied agreement for compensation. Williams did not apply to the personnel department of the Salvation Army, but rather was admitted to the Army's rehabilitation program. Williams indicated on his application for admission, intake interview form, and intake medical report that he suffered from drinking problems and was in need of treatment. While Williams later stated during discovery that he believed that he was in an employment relationship, we agree with the district court that

> [p]laintiff's later statement in his declaration and deposition of a different unilateral state of mind, which was not expressed to anyone at the time of his admittance, is not sufficient to create a genuine issue of fact in the face of that record.

837 F.Supp. at 1053.

Williams's relationship with the Salvation Army was solely rehabilitative. This fact, not subject to reasonable dispute, distinguishes this case from *Alamo* where the associates work contemplated both rehabilitation and compensation. Williams's work therapy was not performed in exchange for in-kind benefits, but rather was performed to give him a sense of self-worth, accomplishment, and enabled him to overcome his drinking problems and reenter the economic marketplace. Williams testified in his deposition:

> But I wanted employment to—I wanted to redevelop my work skills because I had been out of shape more or less, out of the work force for so long that I wanted to reestablish certain skills, get in the habit of working during the day and, you know, help myself on that end. So I felt it ain't like I'm sitting around from the time I have to be at work from 7:00 to 4:00, sitting around doing nothing. I be busy all that time and I don't even think of alcohol.

Deposition of Robert Williams at 61. The facts place this case within the holding of *Walling* where the Supreme Court stated that the FLSA does not cover a person "who, without promise or expectation of compensation, but solely for his personal purpose or pleasure, worked in activities carried on by other persons either for their pleasure or profit." 330 U.S. at 152, 67 S.Ct. at 641.

As noted earlier, Williams was required to sign up for general assistance and food stamps and turn these benefits over to the Salvation Army to offset the cost of his room, board, and clothing. While the record does not reflect the exact amount of benefits that Williams turned over to the Army, it appears that he at least turned over some benefits. *See* Deposition of Robert Williams at 74. We believe that this evidence strongly counsels against a holding that Williams received the in-kind benefits in exchange for his work. Rather, these benefits were given to Williams to enable him to pursue his rehabilitation and Williams was required to help offset their cost.

Williams raises several arguments predicated on the *Alamo* decision. First, Williams argues that the presence of a rehabilitative element does not preclude an employment relationship. We agree. But as noted above, this case is distinguishable from *Ala-*

*mo* where there was *both* a rehabilitative element and an implied agreement for compensation. Here, Williams's relationship with the Salvation Army contemplated only rehabilitation. Second, Williams argues that the provision of room and board does not obviate the need to pay a minimum wage. We certainly agree that in-kind benefits can be "wages in another form." *See Alamo*, 471 U.S. at 301, 105 S.Ct. at 1961. But as already noted, the fact that Williams was required to offset the cost of these benefits distinguishes this case from *Alamo*.

Finally, Williams argues that like the associates in *Alamo*, he was dependent upon the Salvation Army for a long period of time. In *Alamo*, the Court wrote: "Whereas in *Portland Terminal*, the training course lasted a little over a week, in this case the associates were entirely dependent upon the Foundation for long periods, in some cases several years." 471 U.S. at 301, 105 S.Ct. at 1961 (internal quotations omitted). The six-month rehabilitation program at issue here is significantly longer than the one-week training course in *Walling*. Yet, we are unwilling to conclude on this basis alone that Williams was an employee. The one-week program in *Walling* was the necessary time period to allow the trainees to become proficient as brakemen. At the completion of this period, the trainees were eligible for employment with the railroad. Similarly, the beneficiaries of the Salvation Army remain in the work-therapy program long enough to overcome their substance abuse problems and gain the necessary work-related skills to reenter the marketplace. While six months is longer than the one-week period in *Walling*, the beneficiaries have significantly different needs from those of the railroad trainees and six months is not an unreasonable time commitment to treat these needs.

Williams also relies on Section 14 of the FLSA and a 1950 letter from the Administrator of the Department of Labor. Section 14 empowers the Administrator to issue certificates for the employment of learners, apprentices, and the handicapped at less than the minimum wage. Section 14, however, does not broaden the definition of "employee." This section "only relates to learners who are in 'employment.' And the meaning of that term is found in other sections of the Act." *Walling*, 330 U.S. at 152, 67 S.Ct. at 641. Nor are we persuaded by the 1950 letter of the DOL Administrator which concluded that the FLSA covers beneficiaries of the Salvation Army. As the Salvation Army properly notes, there is no evidence that this letter represents the DOL's current interpretation of the FLSA, nor has the DOL ever sought to enforce the opinion contained in this letter.[1]

## IV

Williams was in a sorry state when he joined the Salvation Army as the longest period that he had remained sober was two weeks. Homeless, socially handicapped, and apparently alcoholic, Williams sought refuge in the Salvation Army's Adult Rehabilitation Center. Williams's bargain with the Army was solely rehabilitative and at no point was there an express or implied agreement for compensation. Williams was never an "employee" and thus the FLSA does not apply.[2] The judgment of the district court is AFFIRMED.

POOLE, Circuit Judge, dissenting.

The majority concludes that Williams was not an "employee" under the Fair Labor Standards Act ("FLSA") because he had neither an expressed or implied agreement for compensation with the Salvation Army, and that his relationship with the Salvation Army was solely rehabilitative. Because I believe that there are material disputes of fact regarding Williams's employment status with the Salvation Army, I respectfully dissent.

1. Williams argues that the district court erred in denying his Rule 56(f) request for additional discovery. We review for abuse of discretion. *Qualls v. Blue Cross of California,* 22 F.3d 839, 844 (9th Cir.1994). Williams sought additional discovery to establish that the beneficiaries confer economic benefit upon the Army. Appellant's Opening Brief at 32. We hold that the district court did not abuse its discretion in denying the

Rule 56(f) request on the ground that Williams failed to diligently pursue discovery. *See* 837 F.Supp. at 1051 n. 2.

2. Because we hold that Williams was not an "employee," we need not address whether the Salvation Army is an "enterprise engaged in commerce."

I believe this case is governed by the holding in *Tony and Susan Alamo Foundation v. Secretary of Labor,* 471 U.S. 290, 105 S.Ct. 1953, 85 L.Ed.2d 278 (1985). In *Alamo Foundation,* the Supreme Court concluded that workers participating in the commercial portions of a nonprofit religious organization were covered by the FLSA. This was so despite the fact that no worker claimed to have ever expected compensation. *Id.* at 300–01, 105 S.Ct. at 1960–61. Considering the economic reality of the situation, the Court concluded that because the workers worked for the Foundation for long stretches of time, even years, the district court did not clearly err in concluding that the workers must have expected some sort of compensation. *Id.* at 301, 105 S.Ct. at 1961. The Court emphasized that "the purposes of the Act require that it be applied even to those who would decline its protections." *Id.* at 302, 105 S.Ct. at 1962.

Williams, like the *Alamo Foundation* workers, engaged in work for rehabilitation purposes. However, unlike the workers in *Alamo Foundation,* Williams alleged that he expected compensation for his work at the Salvation Army. In holding that Williams did not have an agreement for compensation, the majority relies on Williams's Beneficiary's Admittance Statement in which Williams stated he was a beneficiary and not an employee of the Salvation Army Rehabilitation Center. However, *Alamo Foundation* explicitly holds that rights under the FLSA can not be waived. *See Alamo Foundation,* 471 U.S. at 302, 105 S.Ct. at 1962. Moreover, Williams's Admittance Statement stated that his continued residence at the Salvation Army's rehabilitation center was dependent upon certain conditions, including the performance of such duties as may be assigned, suggesting the possibility of a quid pro quo arrangement between the parties. Because Williams stated in his declaration that he expected to be compensated for his labor, there remains a material dispute of fact regarding this issue.

The majority is also persuaded that Williams's "sorry state" when he joined the Salvation Army negates any possibility that an employer-employee relationship existed in this case. But a rehabilitative motive does not preclude an employment relationship. *Id.* at 299, 105 S.Ct. at 1960. Furthermore, Williams stated in his declaration that his work at the Salvation Army's Thrift Store significantly improved the value of furniture which resulted in substantial profits when resold. Thus, a material dispute of fact remained regarding the Salvation Army's claim that Williams's labor was purely rehabilitative and served only his own interest, producing no economic benefit to the Salvation Army.

Finally, Williams worked for the Salvation Army for six months which makes this case readily distinguishable from *Walling v. Portland Terminal Co.,* 330 U.S. 148, 67 S.Ct. 639, 91 L.Ed. 809 (1947), the case upon which the majority chose to rely. The trainees in *Walling* worked only one week in a training program that the Supreme Court found was not covered under FLSA because the program benefited the trainees' own interest.

Accordingly, I would reverse and remand to the district court for further proceedings.